UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AUBREY ANDERS,

    Plaintiff,

v.                                          Case No: 6:15-cv-1115-Orl-28GJK

UNITED STATES OF AMERICA,

    Defendant.

## ORDER

This is a consolidated wrongful death action against the United States brought by St. Johns Insurance Company, Inc., and the estates of Aubrey Anders and Darrell Joseph. Anders and Joseph (the Decedents) were killed when the 1957 Beechcraft H35 Bonanza aircraft (N375B) piloted by Anders crashed as it approached the runway at Flagler Airport in Florida. Plaintiffs claim that the negligence of Federal Aviation Authority air traffic controllers was the proximate cause of the Decedents' fatal injuries. But the Government, by its affirmative defenses, asserts that Anders's negligence was the proximate cause of the injuries. Kenneth Orloff, Ph.D., the Government's designated expert witness in the fields of aircraft accident reconstruction and piloting, has rendered opinions supporting the Government's theory of the case. (Report, Doc. 66-1). Plaintiffs filed a motion to strike Dr. Orloff's opinions, (Doc. 63), and the Government filed its response objecting to the motion, (Doc. 66). The Court held a hearing on January 19, 2017, and the parties submitted supplemental briefings, (Docs. 81, 83). Having considered the evidence and argument of counsel, I conclude that the Motion to Strike must be granted in part and denied in part.

I. **Analysis**

The challenged opinions of Dr. Orloff fall into two categories. The first category includes opinions relating to N375B's ailing engine. Plaintiffs argue that those opinions do not meet Daubert[1] standards of relevance. The second set of opinions relates to the theory that the lowered landing gear caused additional stress on the engine, creating heat that contributed to the engine's failure. Plaintiffs contend these opinions were not disclosed in Dr. Orloff's expert report as required by Federal Rule of Civil Procedure 26.

A. **Ailing Engine Opinions**

Federal Rule of Evidence 702 governs expert testimony and provides that if a witness is qualified as an expert, the witness can provide opinion testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent of the opinion testimony has the burden of establishing each precondition to admissibility by a preponderance of the evidence. Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005). Scientific expert testimony must be both relevant and reliable. Daubert, 509 U.S. at 589. The requirement of Rule 702(a) that the evidence "will help the trier of fact to understand the evidence or to determine a fact in issue" "goes primarily to relevance." Id. at 591. Trial courts function as gatekeepers with regard to the admission of expert evidence. United States v. Frazier, 387 F.3d 1244, 1260

---

[1] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

(11th Cir. 2004). In carrying out this charge, trial courts are given substantial discretion. Id.

The Government disclosed its intent to call Dr. Orloff to give opinion testimony and filed his expert report. In his report, Dr. Orloff recounted that N375B had a questionable history with respect to airworthiness due to an ailing engine. The ailing engine, Dr. Orloff opines, is evidenced by the slow rate of climb during the airplane's previous flights. (Report at 6–9). He reported that Anders was aware that the performance of the N375B's engine was substandard and that the aircraft was not airworthy. (Id. at 9). The expert report contains a detailed explanation of how he reached those conclusions. (Id. at 8–9). Dr. Orloff also faulted Anders's decision to lower the landing gear when he did: "Had Pilot Anders delayed lowering the landing gear until on a short final approach, N375B would have arrived over the threshold of the runway without the need for increased engine power to overcome the drag of the landing gears." (Id. at 23). Plaintiffs contend that these opinions should be excluded under the standards of Daubert and Federal Rules of Evidence 401, 402, and 702.

In their motion, Plaintiffs object to several aspects of Dr. Orloff's methodology regarding his ailing engine opinions.[2] During the hearing, however, counsel for Plaintiffs conceded that they no longer object to Dr. Orloff's methodology and calculations after his testimony and demonstration during direct examination. (Hr'g Tr., Doc. 77, at 88, 93).

---

[2] Those objections include: that Dr. Orloff's comparison of an H35 model plane to a J35 model was flawed; that Dr. Orloff erroneously assumed the aircraft was overweight; that Dr. Orloff could not perform his calculations during his deposition; that his methodology could not be replicated by Plaintiffs' expert; and that Dr. Orloff ignored common sense theories for the plane's slow climb.

Thereafter, I found there was no basis to reject Dr. Orloff's opinion based on his methodology. (Id. at 103).

The remaining question is whether Orloff's ailing engine opinions are relevant to the Government's theory that Anders's negligence caused the plane to crash. The ailing engine theory is that the airplane was not airworthy, which relates to Anders's carelessness in deciding to fly the aircraft. This connection, alone, would be insufficient to link the ailing engine and the aircraft's ultimate crash—thus, it would be inadmissible. However, Dr. Orloff's opinions about the relationship between the drag caused by the prematurely lowered landing gear and the need for increased engine power[3] draws a sufficient link between the ailing engine and the crash.[4]

Dr. Orloff's opinions show that the plane was travelling at a low rate of speed as it descended. Dr. Orloff opines that this low rate of speed was caused by the drag of the landing gear and the inability to increase the engine's power.[5] The Government contends

---

[3] These opinions include: "Pilot Anders made the decision to extend the landing gear nearly 5 nm from the runway. After that point in time, the airspeed is noted to steadily decrease at an even greater rate, consistent with the increased drag and only limited power available," (Report at 22); "Had Pilot Anders delayed lowering the landing gear until on a short final approach, N375B would have arrived over the threshold of the runway without the need for increased engine power to overcome the drag of the landing gears," (id. at 23); "Pilot Anders probably extended the landing gear when N375B was about 4.5 nm from the runway, thereby requiring increased engine power to overcome aerodynamic drag," (id. at 24).

[4] Because neither party disputes the fact that the aircraft's engine malfunctioned due to a blown cylinder—which was caused by a decrease in oil—Dr. Orloff's ailing engine opinions are relevant only to the proximate cause of the plane's *crash*, not the proximate cause of the *engine's failure*.

[5] The Court rejects Plaintiffs' contention that there is no evidence that Anders attempted to add power to the engine to overcome the drag of the landing gear, or that the plane was even powered at that time. It does not matter whether Anders actually tried to add power to the engine; it can be reasonably inferred from Dr. Orloff's report that such an attempt would have been futile in light of the ailing engine. Additionally, there is sufficient information in Dr. Orloff's report to show that the aircraft was powered between 4.5 nm

4

that this inability to overcome the drag was a proximate cause of the plane's failure to safely reach the runway at the Flagler Airport. Dr. Orloff's report is therefore relevant. Any "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." Hill v. Allianz Life Ins. Co. of N. Am., No. 614CV950ORL41KRS, 2016 WL 7228746, at *3 (M.D. Fla. Jan. 29, 2016) (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988)). The motion is denied as to Dr. Orloff's opinions regarding the ailing engine theory.

### B. Undisclosed Opinions

The other opinions Plaintiffs want stricken were contained in Dr. Orloff's testimony during the Daubert hearing. Rules 26(a) and (e) of the Federal Rules of Civil Procedure "require parties to disclose all bases of their experts' opinions and to supplement timely their expert disclosures upon discovery of an omission or as required by court order." Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009). And when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In their supplemental argument (Doc. 83), Plaintiffs identify three opinions that were not previously disclosed in Dr. Orloff's expert report. These opinions are: "(1) that the gear extension caused increased stress and drag on the engine; (2) that the pilot added power

---

(when the landing gear was lowered) and 1 nm (when the engine lost power) from the crash site. (Report at 22–24). It can reasonably be inferred from Dr. Orloff's opinions that during that period of time—had the engine been at full capacity—Anders could have offset the drag by applying additional power to the engine, which would have provided sufficient speed to safely reach the threshold of the runway.

and caused stress on the engine; and (3) that the ailing engine caused excessive heating leading to engine failure." The Court agrees that neither the second nor the third opinion is found within or reasonably inferred from Dr. Orloff's report. The first opinion, however, is reasonably inferred from page twenty-two of the Report: "[t]he airspeed is noted to steadily decrease at an even greater rate, consistent with the increased drag and only limited power available." Because Dr. Orloff did not include his second and third opinions in his report, supplemental report, or deposition, they must be excluded from the trial.

II.   **Conclusion**

It is **ORDERED** that Plaintiffs' Motion to Strike Opinions of Kenneth Orloff, Ph.D. (Doc. 63) is **GRANTED in part and DENIED in part**. It is **granted** as to the exclusion of Dr. Orloff's opinions that were raised for the first time during the January 19, 2017 hearing. It is otherwise **denied**.

**DONE** and **ORDERED** in Orlando, Florida, on February 13, 2017.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties