# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

AUBREY ANDERS,

      Plaintiff,

v.                                           Case No: 6:15-cv-1115-Orl-28GJK

UNITED STATES OF AMERICA,

      Defendant.
_____

## ORDER

This case involves the January 4, 2013 crash of a 1957 Beechcraft Bonanza H35 airplane, U.S. registry N375B, as it made its landing approach to the runway at Flagler Airport in Florida. As a result of the crash, the pilot, Michael R. Anders, and two passengers, Charisse M. Peoples and Duane Shaw, were killed. The St. Johns Insurance Company[1] and the estates of Mr. Anders and Ms. Peoples initiated this now consolidated lawsuit, claiming that the negligence of air traffic controllers was the proximate cause of the crash. The Government, on the other hand, maintains that Mr. Anders's negligence was the proximate cause of the crash. Now before the Court is the Government's Daubert[2] motion, which seeks exclusion of certain opinions of Plaintiffs' experts—Joseph Burton, M.D., a forensic pathologist; Douglas Herlihy, an aircraft accident reconstruction expert; and Scott Shappell, Ph.D., a human factors expert. (Doc. 65). The motion must be granted in part and denied in part.

---

[1] St. Johns Insurance Company sues in its capacity as the subrogee for its insured, Susan Crockett, who owns the home that was damaged during N375B's fatal crash.
[2] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

I.  **Daubert Standard**

Federal Rule of Evidence 702 governs expert testimony and provides that if a witness is qualified as an expert, the witness can provide opinion testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent of the opinion testimony has the burden of establishing each precondition to admissibility by a preponderance of the evidence. Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005). Scientific expert testimony must be both relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). The requirement of Rule 702(a) that the evidence "will help the trier of fact to understand the evidence or to determine a fact in issue" "goes primarily to relevance." Id. at 591. Trial courts function as gatekeepers with regard to the admission of expert evidence. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). In carrying out this charge, trial courts are given substantial discretion. Id.

II.  **Analysis**

A.  Joseph Burton, M.D.

The Government challenges Dr. Burton's qualifications to give opinion testimony relating to: (1) the Federal Aviation Administration's (FAA) policy concerning its medical clearance to pilot aircraft; (2) appropriate pilot behavior during an emergency; and (3) legal standards and requirements. Because Dr. Burton has no training or experience in these areas, the Government insists that he is precluded from giving opinion testimony under Rule 702.

2

### 1. FAA Policy

It appears that Dr. Burton is a well-qualified medical doctor with expertise in the field of forensic pathology. But with regard to FAA standards for issuing medical clearance to pilots, Plaintiffs offer nothing showing that Dr. Burton has any special training or experience. Dr. Burton testified that he has never been an FAA aviation medical examiner and that he does not have education, training, or skill on medical clearance of pilots. (Burton Dep., Doc. 65-1, at 64, 74, 107–08, 140–42, 145). Because he is unfamiliar with the medical clearance process for pilots, his testimony on this subject will be excluded.[3]

### 2. Appropriate Pilot Behavior

The Government also objects to Dr. Burton giving testimony regarding the appropriateness of a pilot's response to an emergency situation. In his expert report, Dr. Burton states that Mr. Anders was "a confident and alert pilot" who took "appropriate measures to manage his emergency." (Burton Report, Doc. 65-2, at 5). But there is nothing in his report or Plaintiffs' response to the motion showing that Dr. Burton is qualified to opine on the appropriateness of a pilot's response to an emergency. Significantly, Dr. Burton has never been a pilot or an air traffic controller and has not received training in either field. (Burton Dep. at 37–39, 97, 110–11). Dr. Burton bases his conclusion that Mr. Anders reacted appropriately on the fact that the air traffic controllers did not tell Mr. Anders otherwise:

> A. Well, I never saw the tower say, "I told you to do this and you didn't do it. What's going on?" There's nothing in the transcribed records or anything I remember from the audio records to indicate they were unhappy with what he was doing.

---

[3] That some of Dr. Burton's opinions are consistent with those of one of the Government's experts does not make Dr. Burton any more qualified to give those opinions. Dr. Burton may, of course, apply the testimony of other experts to form the basis of an opinion that is within his own field of expertise.

> Q. Are you relying on any piloting knowledge to reach the opinion that his responses were appropriate?
>
> A. No. I'm relying on the fact that the tower never indicated that they weren't. Not my knowledge. I've already told you I don't know how to fly a plane, I don't know what the language is, anything like that.

(Burton Dep. at 96–97).

> Q. You stated that the pilot took appropriate measures to manage his emergency, and I just want to know how you know that.
>
> A. Well, let's say I'm the pilot and you're the tower, and you've been telling me to take this heading or that heading and I'm not doing it. If I'm the tower, I'm going to be screaming at you to see why you're not responding to me.
>
> There's nothing that I heard that indicated the tower was upset with the pilot. That's all I can say.
>
> Q. Do you know that that's the normal practice for an air traffic control person, to get angry with an individual for not following their direction?
>
> A. Well, maybe I shouldn't have said "angry," but angry would be appropriate, I think. Be concerned. And if I'm concerned, I'm going to talk louder.

(Id. at 135). On this issue the Government's motion has merit. This testimony will be excluded.

### 3. Legal Opinion

Finally, the Government objects to Dr. Burton offering opinions on legal issues. The motion identifies three specific statements of Dr. Burton that allegedly should be excluded. First, Dr. Burton advises that evidence of Mr. Anders suffering from hypertension and using Atenolol[4] "would unnecessarily invite error and unduly prejudice Plaintiffs." (Burton Report at 4). The Government also seeks to exclude Dr. Burton's legal opinion that Mr. Anders's

---

[4] Atenolol is a blood pressure medication. (Resp. to Daubert Motion, Doc. 68, at 3).

4

history of flying without a medical certificate "is irrelevant, inadmissible prior bad act evidence and unduly prejudicial." (Id. at 7). The final statement the Government challenges is that evidence of Mr. Anders having diabetes "lacks any causation" and is "irrelevant."

These opinions held by Dr. Burton will be excluded. Even if he were qualified to render legal opinion, it would not be proper for him to do so here. Questions of admissibility of evidence are for the court alone to decide. But it is not clear from the material submitted what Dr. Burton meant when he referred to diabetes as "lacking causation" and "irrelevant." (Id. at 4). It is possible that in using these terms he was referring to questions of medicine and not law. Counsel will be permitted to address this narrow question at the final pretrial conference.

    4. *Dr. Véronneau's Testimony*

Much of Dr. Burton's testimony appears to be rebuttal of the Government's medical expert, Stephen Véronneau, M.D. Before the Daubert hearing on Plaintiffs' motion challenging Dr. Véronneau's opinion testimony, the Government filed a notice that it was no longer offering Dr. Véronneau's opinions relating to "Anders' diabetic condition that are the subject of Plaintiffs' Motion to Strike." (Doc. 73 at 2) But that concession came with the caveat that "Dr. Véronneau's other expert opinions, which are beyond the scope of Plaintiffs' Daubert motion, are not withdrawn." (Id. at 2). It seems that much of Dr. Burton's opinions were being offered to rebut the now withdrawn opinions of Dr. Véronneau.

In light of the withdrawal of Dr. Véronneau's testimony and the rulings on this motion, the parties shall, at the final pretrial conference, advise the Court of remaining issues pertaining to Dr. Burton's opinion testimony.

5

### B.  Douglas Herlihy

Douglas Herlihy is an aircraft accident reconstruction expert. He offers an opinion rebutting Dr. Véronneau's opinion that "chemical anomalies and other post-mortem irregularities suggested possible degradation of Mr. Anders' performance." (Herlihy Report, Doc. 65-3, at 11). Mr. Herlihy explains:

> This included a possible diagnosed or undiagnosed Type II diabetes, with possible neurocognitive implications, possible sleep apnea, or the presence of an unreported medication. All of these possible conditions, applicable to Federal Aviation Regulations or not, are, in my opinion, not relevant to the actual cause of the crash.

(Id.). The Government contends that this is a medical opinion beyond Mr. Herlihy's expertise. But that description of the testimony is a stretch. Mr. Herlihy does not say that Mr. Anders did or did not have any of the ailments listed. Rather, he explains that whether Mr. Anders had the ailments or not, his airmanship was not impaired and did not cause or contribute to the cause of the crash.

The opinion offered by Mr. Herlihy is within his field of aircraft accident reconstruction, and his qualifications as an expert in that field are not challenged. The motion to exclude on grounds that the opinion does not meet the standards of Daubert and Rule 702 must be denied.

### C.  Scott Shappell, Ph.D.

The Government's challenge to the testimony of Dr. Shappell is moot. Both the Plaintiffs and the Government have agreed that they will not offer opinion testimony from human factors experts.

III. Conclusion

It is **ORDERED** that Defendant United States of America's <u>Daubert</u> Motion to Exclude Opinions of Plaintiffs' Experts Burton, Herlihy, and Shappell (Doc. 65) is **GRANTED in part and DENIED in part**, as set forth herein.

**DONE** and **ORDERED** in Orlando, Florida, on February 15, 2017.

                                          JOHN ANTOON II
                                          United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties